# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

01 MAY 31 AM 10: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GERI COPELAND and TONEY COPELAND, ) ) ) | |
| Plaintiffs, ) ) ) | CV-01-PT-782-M |
| vs. ) ) | |
| GUEST APOTHECARY, INC. d/b/a/ ) PHYSICIAN'S APOTHECARY and ) WHITEHALL ROBBINS ) HEALTHCARE, INC. | |
| Defendants. | |

ENTERED
MAY 31 2001

## MEMORANDUM OPINION

This cause comes to be heard upon plaintiffs Geri and Toney Copeland's ("the plaintiffs") Motion to Remand, filed on April 16, 2001.

## FACTS

The plaintiffs, both citizens of Alabama, filed the instant action in the Circuit Court of Etowah County, Alabama, on February 27, 2001, against Whitehall Robbins Healthcare, Inc. ("Whitehall"), a Delaware Corporation with its principal place of business in New Jersey, and Guest Apothecary, Inc., also known as Physician's Apothecary ("Physician's"), an Alabama Corporation. The plaintiffs claim that they were injured as a result of defendant Whitehall's creation and distribution of the product Robitussin CF, and defendant Physician's sale and recommendation of Robitussin CF to plaintiff Geri Copeland. The plaintiffs claim that in March of 2000, Geri Copeland, who had been complaining of flu-like symptoms, went to Physician's to purchase some over-the-counter medication for her symptoms. The plaintiffs claim that Geri

1

normally purchased "regular" Robitussin for cold symptoms. At the defendant's pharmacy, she encountered pharmacist Danny Guest, also the president of Physician's, who advised her that, to treat her particular symptoms, she should, instead, purchase Robitussin CF. The plaintiffs claim that, but for the pharmacist's advice, Geri would not have purchased the Robitussin CF.

The plaintiffs assert that Robitussin CF contains phenylpropanolamine ("PPA"), an ingredient in many over-the-counter medications that, in recent years, has been alleged to have caused serious physical complications in some consumers. They claim that, upon information and belief, regular Robitussin does not contain PPA. The plaintiffs allege that after Geri had used the Robitussin CF that she purchased from Physician's, she had a stroke, and was taken to the hospital. They claim that after she was released from the hospital, she resumed taking Robitussin CF and had another stroke. According to the plaintiffs, after Geri's second stroke, she asked Physician's whether the Robitussin CF could have caused the strokes. They claim that Physician's suggested that Geri look at the Robitussin CF ingredients to determine whether Robitussin CF contained PPA. After determining that Robitussin CF indeed contained PPA, the plaintiffs filed the instant suit in the state court.

Defendant Whitehall-Robins Healthcare, Inc. ("Whitehall-Robbins") removed the action to this court on March 29, 2001, on the grounds that defendant Physician's was fraudulently joined in order to defeat this court's diversity jurisdiction. Specifically, defendant Whitehall-Robbins argues that the plaintiff cannot state a colorable claim against Physician's. The plaintiffs filed the instant Motion to Remand on April 16, 2001. The plaintiffs do not dispute that the amount in controversy exceeds $75,000; the issue is whether defendant Physician's, an Alabama corporation, has been fraudulently joined.

## STANDARD FOR MOTIONS TO REMAND BASED ON FRAUDULENT JOINDER

The Eleventh Circuit discussed fraudulent joinder in detail in Pacheo de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). In a removal case based on fraudulent joinder, the removing party shoulders the burden of proving that either: "(1) there is no possibility the plaintiff can establish a cause of action against the defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id. (citing Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."). The removing party must prove by clear and convincing evidence that joinder of the resident defendant was fraudulent. Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949 (1964)("A claim of fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence."); Wright v. American Gen. Life & Accident Ins. Co., 136 F. Supp. 2d 1207, 1211 (M.D. Ala. 2001)("A claim of fraudulent joinder must be supported by clear and convincing evidence."); Everett v. M.T.D. Products, Inc., 947 F. Supp. 441, 445 (N.D. Ala. 1996)("A defendant must assert with particularity that a joinder is fraudulent and support the claim by clear and convincing evidence.").

According to the circuit court, the burden to prove fraudulent joinder is "a heavy one." Id. "If the plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." Id. (citing Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1562 (11th Cir. 1989)). The inquiry is based on the plaintiff's pleadings at the time of removal, as well as affidavits and deposition transcripts submitted by the parties. Id. The district court is to evaluate the factual allegations in the light most favorable to the plaintiff and

to resolve uncertainties about the law in the plaintiff's favor. Id.

This court does not have to find that the plaintiff's claim against the resident defendant could survive a motion for summary judgment. Crowe, 113 F.3d at 1541. It is not to evaluate the merits of the plaintiff's claim "beyond determining whether it is an arguable one under state law." De Perez, 139 F.3d at 1380. In order to find that a resident defendant has been fraudulently joined, the court must conclude that there is no possibility that the plaintiff would be able to establish a cause of action against the defendant. Insignia v. LaBella, 845 F.2d 249, 254 (11th Cir. 1988).

This court will now determine whether defendant Whitehall-Robbins has proven by clear and convincing evidence that the plaintiffs' complaint cannot possibly establish a cause of action against defendant Physician's.

## ARGUMENT

Defendant Whitehall-Robbins argues that the plaintiffs' complaint cannot possibly state a cause of action against Physician's for products liability, negligence, wantonness, and/or breach of warranty claims. It contends that each of these claims is subsumed or preempted by the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), which, it asserts, provides the plaintiffs' sole remedy. It claims that, pursuant to an affirmative defense to the AEMLD known as the "causal relation defense," the plaintiffs cannot recover against Physician's under any theory of liability that the complaint purports to state because, even if the Robitussin CF was defective in some way, Physician's did not contribute to that defect.

The "causal relation defense" is an affirmative defense that may be raised by the defendant distributor to show that "he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not

4

contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer." Allen v. Delchamps, Inc., 624 So. 2d 1065, 1068 (Ala. 1993).[1] Defendant Whitehall-Robbins argues that the plaintiffs cannot show, and have not even attempted to show, that Physician's contributed to the alleged defect in the Robitussin CF. It points to Guest's affidavit, in which he states that, to the extent that Physician's sold Robitussin CF to its customers, it sold it as "a finished product in a closed container as it was received . . . from the manufacturer." Guest affidavit, para. 3-6. Guest claims that Physician's did not test the medication, package or seal the medication inside the bottles, or contribute in any way to the alleged defect. Id. at para. 4-6. Further, Guest's affidavit states that when Guest, a licensed pharmacist, sold the Robitussin CF to Geri in March 2000, he had no more knowledge than she did of the dangers presented by the PPA contained in the Robitussin CF.[2] Defendant Whitehall-Robbins argues that, in light of the fact that the plaintiffs cannot show either that Guest possessed knowledge of the defect or the opportunity to discover the defect that was superior to that of plaintiff Geri Copeland, the causal relation defense precludes the plaintiff from the possibility of stating a cause of action under the AEMLD. Whitehall-Robbins has cited to Alabama Supreme Court cases that hold that where a distributor dispenses a drug in a closed container, as it was received from the manufacturer, the distributor cannot be held liable, as a matter of law, for the drug's defects when its knowledge of the defects is not superior to that of the consumer. Huprich v. Bitto, 667 So. 2d 685, 688 (Ala. 1995)(affirming summary judgment

---

[1] Defendant Physician's raised this affirmative defense in its Motion to Dismiss, filed on March 29, 2001.

[2] Guest's affidavit, at paragraph 6, states that defendant Physician's "had no knowledge of any alleged defective condition with respect to Robitussin CF." The court is unsure of whether Physician's is denying knowledge of PPA's potential side-effects, or knowledge that Robitussin CF contained PPA, or both.

on AEMLD claim in favor of seller who did not know of the defect and had no opportunity to inspect the product that was superior to the knowledge or opportunity of the purchaser); Fleming Farms v. Dixie AG Supply, Inc., 631 So. 2d 922, 928 (Ala. 1994)(affirming summary judgment for distributor on AEMLD claim where distributor received product from manufacturer in sealed container in an already defective condition, did not contribute to the defect, had no knowledge of the defective condition, and had no opportunity to inspect the product that was greater than that of the consumer's).

With regard to the plaintiffs' negligence, wantonness, and breach of warranty claims, defendant Whitehall-Robbins argues that all of these claims are preempted by the AEMLD, citing Pitts v. Dow Chemical Co., 859 F. Supp. 543, 551 (M.D. Ala. 1994)("the AEMLD is the sole cause of action for negligence when the factual basis for the charge of negligence is that the defendant set a defective product into the stream of commerce."); Veal v. Teleflex, Inc., 586 So. 2d 188, 190-191 (Ala. 1991)(claim that product was unreasonably dangerous for its intended use was claim under AEMLD and did not state separate negligence claim); Uarbrough v. Sears, Roebuck & Co., 628 So. 2d 478, 483 (Ala. 1993)("Whether the kerosene heater was unreasonably dangerous is not a question properly addressed in a claim alleging breach of warranty under UCC, but . . . was properly raised in a claim under the AEMLD."). It argues that the plaintiffs' negilgence, wantonness, and breach or warranty claims simply allege that Robitussin CF was defective and unreasonably dangerous for its intended use, allegations that invoke the preemptive effect of the AEMLD. Whitehall-Robbins contends that the same affirmative defense that it seeks to apply to the plaintiffs' AEMLD products liability claim also precludes any possibility that the plaintiffs will recover under the AEMLD for their negligence, wantonness, and breach of warranty claims.

The plaintiffs, in response, remind this court that they are not, at this point, required to prove that their claims will survive a motion for summary judgment. They also note that this court is to evaluate the possibility of their stating a claim against Physician's, in part, by assuming that all of the facts set forth in the complaint are true, and by resolving all uncertainties as to state substantive law against the defendants, citing B., Inc. v. Miller Brewing Co., 663 F.2d 545, 548 (5th Cir. 1981). The plaintiffs contend that Whitehall-Robbins' use of the causal relation affirmative defense is "premature." They claim that, in bringing this particular affirmative defense, Whitehall-Robbins has ignored "the significance of Danny Guest's profession and the nature of Danny Guest's relationship with and advice to Ms. Copeland." The plaintiffs argue that, as a licensed pharmacist, Guest is a "specialized . . . health care provider trained to be knowledgeable regarding medications and their effects." The plaintiffs allege that, by virtue of his profession, Guest's knowledge about medications, whether over-the-counter or prescription, was far superior to that of Geri Copeland. The plaintiffs also contend that pharmaceutical magazines and medical journals have warned of possible harmful side effects from the use of PPA for at least the past fifteen years, and that Guest and defendant Physician's had ample opportunity to discover the defects allegedly inherent in PPA and in Robitussin CF. As a layperson, the plaintiffs argue, Geri Copeland could not be expected to know, as much as a licensed pharmacist could be expected to know, that, by using a medicine containing PPA, she risked having a stroke. The plaintiffs cite to Allen v. Delchamps, 624 So. 2d 1065, 1069 (Ala. 1993), in which the Alabama Supreme Court stated that whether the defendant's knowledge of the alleged defect or opportunity to discover it is superior to that of the consumer is "a genuine issue of material fact." The Alabama Supreme Court in Delchamps reversed the trial court's grant of summary judgment to the defendant based on the lack of causal relation defense,

7

concluding that "Delchamps is entitled to present evidence and to argue that there was no causal relation between what it did or failed to do and [the plaintiff's] injuries, but it must do so to the factfinder.[3] Id.

The plaintiffs further argue that their negligence claims against Physician's take two forms: negligence in entering a defective product into the stream of commerce, which, they admit, may be subsumed in their AEMLD claim, and negligence or wantonness in the recommendation of the use of a defective product instead of a different, non-defective product. The plaintiffs argue that the negligent recommendation claim is not subsumed by the AEMLD because it is based on the negligent endorsement of a product, not the negligent placement of the product into the stream of commerce. Defendant Whitehall-Robbins submitted a brief response to the plaintiffs' reply, arguing that because the plaintiffs' negligent recommendation claim is based in part upon the product's being defective, under the AEMLD, it is still the same claim as the products liability claim.

This court does not need to reach the issue of whether the AEMLD precludes the

---

[3] Whitehall-Robins argues that Delchamps is distinguishable because the defendant in that case inspected allegedly defective produce every day for freshness and quality, and required the suppliers to certify that they complied with pesticide and insecticide regulations, activities that truly gave it a superior opportunity to discover the defects in the produce. It appears to argue that Robitussin CF's closed container prohibits this kind of frequent inspection, and, therefore, this kind of superior knowledge. This court cannot conclude that the superior knowledge or opportunity prong of the causal-relation defense likely hinges upon the number of times that the defendant inspected or had the opportunity to inspect the allegedly defective goods. If the plaintiff can show that defendant Physician's had superior knowledge of the alleged defect, or a superior opportunity to gain such knowledge, regardless of whether that opportunity arose once or a hundred times, the defendant cannot avail itself of the defense. Furthermore, if defendant Physician's knew about the alleged dangers of PPA, the opportunity to inspect the goods and discover the defect in this closed-container scenario could simply arise by reading the ingredient label on the side of the sealed box. Superior knowledge and opportunity, in this case, has two components: The knowledge of the alleged defect in the product, the ingredient PPA, and the knowledge of the implications of such an ingredient.

plaintiffs' claim for negligent recommendation of Robitussin CF.[4] As long as the plaintiffs could possibly prevail upon even one of their claims against defendant Physician's, this court lacks subject matter jurisdiction to hear it. This court finds that Whitehall-Robbins has not shown that the causal relation affirmative defense removes all possibility of the plaintiffs' recovering against Physician's under the AEMLD. In order for Whitehall-Robbins to prove the causal relation defense, it must prove, in part, that defendant Physician's had no knowledge of the alleged defect and no opportunity to inspect the product to discover the defect that was superior to the plaintiffs' knowledge and opportunity. The plaintiffs here have alleged a genuine issue of material fact as to this part of the defense. They have pointed to Guest's status as a licensed pharmacist, a profession that specializes in the knowledge of different forms of pharmaceuticals and their effects on consumers. They have also submitted an article from a professional pharmacist's magazine, "Drug Topics: the Newsmagazine for Pharmacists," dated 1995, that mentions possible safety complications with the use of PPA, and even notes that one pharmaceutical group was adding warning labels to products that it manufactured containing PPA. In light of this evidence, defendant Whitehall-Robbins's claim that, at the time that he sold the Robitussin CF to the plaintiff, Guest did not have superior knowledge of the product's alleged defect or a superior opportunity to inspect the product to discover the defect, raises a genuine issue of fact that will have to be determined by a fact finder. If the finder of fact were to credit the plaintiff's evidence that Guest indeed had either superior knowledge of the alleged defect or a superior opportunity to gain the knowledge, the defendant would not be able to utilize

---

[4] This court doubts the legal accuracy of Whitehall-Robbins's argument regarding AEMLD "preemption." The fact that this legal proposition may be reasonably disputed may, itself, be enough to defeat the claim of fraudulent joinder.

the affirmative defense.

Whitehall-Robbins does not claim that the plaintiff cannot, as a matter of law, prove the prima facie elements of a products liability claim against Physician's under the AEMLD. It does not point to some outside procedural defect in the plaintiff's claim, such as a statute of limitations, that would foreclose the plaintiff from pressing her suit against Physician's. It instead relies entirely upon its ability to prove the affirmative defense of causal relation. It has not done so sufficiently here. Without deciding the eventual merits of either the plaintiffs' case or the causal-relation defense, this court finds that Whitehall-Robbins has not met its burden of proof by clear and convincing evidence that there is no possibility that the plaintiff's complaint could state a claim against defendant Physician's in state court. Therefore, the court finds that the joinder of defendant Physician's is not fraudulent and that it lacks subject matter jurisdiction to retain this case. The plaintiffs' Motion to Remand will be Granted.

This 31st day of May, 2001,

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE